1  MARK PACHOWICZ (SBN 138108)
   *mark@pachowicz.com*
2  JENNIE HENDRICKSON (SBN 144562)
3  *jennie@pachowicz.com*
   KATHLEEN MAHEU (SBN 258650)
4  *kat@pachowicz.com*
5  JONNY RUSSELL (SBN 297468)
   *jonny@pachowicz.com*
6  Law Offices of Mark Pachowicz, APLC
7  4055 Mission Oaks Blvd., Suite A
8  Camarillo, CA 93012
   Tel: (805) 987-4975
9
10 Attorneys for Plaintiff
   Jimmie Williams III
11

12           **UNITED STATES DISTRICT COURT**

13 **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

14

15

16 Jimmie Williams III                    Case No. 5:19-cv-00470

17                    PLAINTIFF,          **PLAINTIFF'S COMPLAINT
                                          FOR DAMAGES FOR:**
18           vs.
                                          1. VIOLATION OF 42
19 SAN BERNARDINO COUNTY                     U.S.C.  (FOURTH
   SHERIFF'S DEPARTMENT, a public            AMENDMENT) –
20 entity;                                   UNREASONABLE
                                             SEIZURE (**June 27,
21                                           2018 Incident)
   COUNTY OF SAN BERNARDINO; a
22 public entity;                         2. VIOLATION OF 42 U.S.C.
                                             § 1983 (FOURTH
23 CITY OF VICTORVILLE; a public entity;    AMENDMENT) –
                                             UNREASONABLE
24                                           SEIZURE
   SHERIFF JOHN MCMAHON;                     [UNREASONABLE
25 individually and in his official capacity as INVESTIGATIVE STOP
26 Sheriff;                                  AND UNREASONABLY
                                             LONG SEIZURE]
27

28 ─────────────────────────────────────────────

SERGEANT KELLEY; individually and in his official capacity as a sergeant; and

DOES 1 through 10, inclusive,

DEFENDANTS.

3. VIOLATION OF 42 U.S.C. § 1983 (FOURTH AMENDMENT) – [UNREASONABLE SEIZURE AND EXCESSIVE FORCE]

4. VIOLATION OF 42 U.S.C. § 1983 – (FOURTH AMENDMENT) – [UNREASONABLE SEARCH OF RESIDENCE]

5. VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT) – [RETALIATION]

6. VIOLATION OF 42 U.S.C. § 1983 – (FOURTEENTH AMENDMENT) – [EQUAL PROTECTION AND DELIBERATE INDIFFERENCE]

7. VIOLATION OF 42 U.S.C. § 1983 – (INVASION OF PRIVACY)

8. VIOLATION OF 42 U.S.C. § 1983 – (SUPERVISORY LIABILITY)

9. VIOLATION OF 42 U.S.C. § 1983 – (MONELL CLAIM)

10. FALSE IMPRISONMENT

11. NEGLIGENCE

12. BANE ACT VIOLATION

13. BATTERY

14. INVASION OF PRIVACY (VIOLATION OF CAL. CONST. ART. I, SECTION 1 AND INTRUSION INTO PRIVATE AFFAIRS)

15. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

16. INJUNCTIVE RELIEF (PERMANENT INJUNCTION)

**AND DEMAND FOR JURY TRIAL**

Plaintiff Jimmie Williams III ("Plaintiff") complains of defendants San Bernardino Sheriff's Department, County of San Bernardino, City of Victorville, Sheriff John McMahon, Sergeant Kelley, and DOES 1 through 10, inclusive, as follows:

## NATURE OF THE ACTION

1.     Plaintiff is a 34-year old truck driver.  He currently resides with his girlfriend (Danielle) in Victorville, California, located in San Bernardino County. Plaintiff has been repeatedly falsely arrested due to an ongoing "mistaken identification" involving a convicted felon, who shares a similar name and the same birth date as Plaintiff.  In 2018 alone, Plaintiff was handcuffed by San Bernardino County Sheriff's deputies on three separate occasions between May and July due to the same issue of mistaken identification.

2.     This action concerns the refusal of local criminal justice agencies to utilize readily available information and existing identification systems to

accurately identify the subjects of warrants issued by superior courts in San Bernardino and Riverside, and to institute simple, common-sense processes to insure that when a warrant issues, it identifies its subject by the unique identifiers law enforcement created years ago to address the problem of different persons sharing the same and/or similar names, birthdates, physical descriptors, and the problems of persons using aliases, stealing other identities, etc.  Related to this are the agencies' indifference to instances where the same person is repeatedly arrested on a warrant meant for another, an indifference that manifests itself by the agencies' refusal to do anything to prevent the person's re-arrest on the same warrant notwithstanding the agencies' knowledge, beforehand, that the person is *not* the warrant's subject.

3.      Plaintiff seeks to recover damages pursuant to 42 U.S.C. §§ 1983 and 1988, under the First, Fourth, Thirteenth, and Fourteenth Amendments of the United States Constitution, and under the general laws of the State of California.

4.      Plaintiff brings this action seeking recovery for the harms and losses he has suffered at the hands of the defendants, and to prevent future claims of mistaken identity.  By bringing this action, Plaintiff also seeks to improve the unlawful policies and practices of San Bernardino Sheriff's Department, so that no other individual will have to suffer the same severe harms and losses Plaintiff has suffered.

5.      This case involves important rights affecting the public interest.

## JURISDICTION

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 (federal question) and 1343 (civil rights), and arises under 42 U.S.C. §§ 1983 and 1988. The state law claims for relief are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

## VENUE

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1367 as the acts complained of in Complaint occurred in the City of Victorville, County of San Bernardino, State of California, within the boundaries of the Central District of California.

## PARTIES

8.      Plaintiff Jimmie Williams III ("PLAINTIFF") was, at all times relevant herein, a resident of the City of Victorville, County of San Bernardino, State of California.

9.      Defendant San Bernardino County Sheriff's Department (hereinafter "SBCSD") is a public entity with the capacity to sue and be sued, duly organized and existing under and by virtue of the laws of the State of California.

10.     County of San Bernardino (hereinafter "COUNTY") is a chartered subdivision of the State of California with the capacity to sue and be sued under

state law and Government Code section 910 et seq. COUNTY owns, operates, manages, directs, and controls Defendant SBCSD, and its agents and employees acting within the course and scope of their agency and/or employment. COUNTY was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the SBCSD and its employees and agents complied with the laws and the Constitution of the United States and with the laws and Constitution of the State of California.

11.    City of Victorville (hereinafter "CITY") has a non-delegable duty of oversight of the officers who enforce the laws of the jurisdiction, as well as of the departments, management, policies, procedures, training, and supervision of such officers, as the CITY contracts with COUNTY for the provision of law enforcement officers.

12.    Defendant Sheriff John McMahon (hereinafter "SHERIFF MCMAHON") is and was at all times and was at all times mentioned herein the elected Sheriff of San Bernardino County, and a peace officer as defined in Penal Code section 830.1. As such, he is the chief policymaker for defendant SBCSD and is responsible for overseeing and implementing policies and practices followed by officers, jailers, and other personnel of the SBCSD who verify that persons arrested pursuant to warrants are in fact the persons wanted on those warrants. SHERIFF MCMAHON was charged by law with, and was responsible for, the

administration of SBCSD and its employees and agents, and for the hiring, supervision, training and disciplining of persons, agents and employees working within the SBCSD, including supervisory officials, deputies, and custody personnel. Plaintiff sues SHERIFF MCMAHON in his personal and individual capacity as a supervisory official for his own culpable acts.

13.    Defendant Sergeant Kelley (hereinafter "SERGEANT KELLEY") was at all times herein a sergeant and employee of SBCSD and COUNTY, and peace officer as defined in Penal Code § 830.1. SERGEANT KELLEY was charged by law with, and was responsible for, the administration of SBCSD deputy activities, for supervising, training and disciplining SBSO deputies, with such supervision, training and discipline including the duty to ensure that deputies complied with policies and procedures of SBCSD and COUNTY, and with the laws and constitutions of the United States, and of the State of California. At all times relevant herein, SERGEANT KELLEY was acting in the course and scope of his employment and agency, and acted under color of law.

14.    The true names and capacities of Defendants sued herein as DOES 1 through 10 are line supervisors, deputies or civilian employees, who are unknown to Plaintiff, and who are therefore sued as Doe Defendants by such fictitious names. Upon learning their nexus to this incident and their true identity, Plaintiff will move to amend this Complaint to show the true names and capacities of such

Doe Defendants. DOES 1 through 10 were at all times mentioned herein employees or agents of COUNTY and/or SBCSD, and at all times acted within the course and scope of such relationship(s), and at all times acted under color of law. DOE 1 specifically refers to the individual deputy who came to Plaintiff's house on July 20, 2018 to allegedly serve a felony warrant.

15.     Whenever reference is made in this Complaint to any act by Defendants and DOES 1 through 10, such allegations and references will also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

## EXHAUSTION OF REMEDIES

16.     On December 3, 2018, Plaintiff timely and properly filed government claims pursuant to Government Code section 910 et seq., on COUNTY.  On January 2, 2019, COUNTY denied the claim filed against COUNTY.  Plaintiff has complied with the state claims statute and as to all such claims, this action is timely filed.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

17.    Plaintiff has been repeatedly falsely arrested because he has been mistakenly identified as another individual who shares the same first and last name and same date of birth (i.e., "fugitive Jimmie.")  Fugitive Jimmie's full legal name is "Jimmie Antonio Williams, Jr."

18.    Throughout his adult life, Plaintiff has been handcuffed numerous times due to the mistaken identity issue.  At times, Plaintiff has been physically beaten by officers and held at gunpoint in front of his children.  On several occasions, Plaintiff has been booked at the police station.  When booked, Plaintiff has been put in the gang dormitory with gang members until his name is cleared through fingerprints because the "fugitive Jimmie" is a gang member.  In 2018, Plaintiff was handcuffed three separate times between May and June because the "fugitive Jimmie" had an outstanding felony arrest warrant.

**May 2018 Incident**

19.    On or about May 14, 2018, Plaintiff was having issues with his home security alarm system that kept going off.  A SBCSD deputy was dispatched to Plaintiff's residence.  When the deputy arrived, Plaintiff was in the garage on his cellphone with Vivint Home Security regarding his alarm system's false alarms.

20.    The SBCSD deputy listened to Plaintiff speak with the security company on Plaintiff's cellphone's speaker phone about the alarm which the

deputy was responding to.  The deputy stood by relaxed, listening to the conversation between Plaintiff and the company.  After Plaintiff hung up the phone, the deputy was convinced there was no burglary issue.

21.     The deputy asked for Plaintiff's name merely for purposes of writing his police report.  After running Plaintiff's name in his system, the deputy informed Plaintiff that there was a similar subject hit in his computer—"Jimmie Antonio Williams Jr.," with the same birth date, and who had an outstanding arrest warrant.

22.     Plaintiff immediately went to the Victorville Sheriffs' station to lodge a complaint.  There, Plaintiff met with SERGEANT KELLEY who issued a document that stated Plaintiff was different from the "fugitive Jimmie" subject to the arrest warrant.  SERGEANT KELLEY assured Plaintiff that there were not enough similarities for an officer to confuse Plaintiff with the "fugitive Jimmie." However, Plaintiff was not convinced based on his past encounters with law enforcement running into the same problem.  SERGEANT KELLEY also assured Plaintiff that she would speak to the captain and other sergeants to ensure they were aware of Plaintiff's unique problem.

**June 2018 Incident**

23.     On June 27, 2018, Plaintiff's home security system sent out another

false alarm.  On this occasion, Plaintiff was not physically at home.

24.   Upon arriving at his home, Plaintiff noticed a Sheriff's patrol car parked one house down from his house.  Deputy DOES seemed uninterested in Plaintiff when he pulled up to his house with the alarm sounding.  Plaintiff entered his home and checked it for about three minutes with his pet dog.  Plaintiff then went outside to see if the officers had exited their vehicle. They had not.

25.   Plaintiff decided to go back into his home and conduct a more thorough inspection of his residence.  After about three more minutes, Plaintiff went back outside to make contact with the nearby deputies ("DOES").  This time Plaintiff exited through the garage.

26.   After Plaintiff made contact with the deputies—and let the deputies know why he believed it was a false alarm—deputies asked Plaintiff for his ID for "report purposes only."  After running his name through their system, Plaintiff found himself, again, handcuffed.

27.   Eventually, Plaintiff was released from the back of the patrol car in front of his house after about 5-10 minutes.

28.   Plaintiff immediately went back to the Victorville patrol station and spoke to the same SERGEANT KELLEY who had given Plaintiff the paper to show deputies should he ever find himself questioned; and who had previously assured him he would not have any future mix-up incidents.  (This discussion

between Plaintiff and SERGEANT KELLEY was streamed live via Facebook.)

Plaintiff informed SERGEANT KELLEY that—just as he had predicted—he,

again, had been mistaken by one of her deputies whom she had assured Plaintiff

would be able to distinguish Plaintiff from the "fugitive Jimmie."

29.    On video, SERGEANT KELLEY asked Plaintiff why he had not

shown the paper she had given Plaintiff.  Plaintiff responded that in early June,

vehicles at his residence (and three other residences next to his) were broken into,

and that SERGEANT KELLEY'S document was one of the items stolen from his

vehicle.   SERGEANT KELLEY, again, assured PLAINTIFF that the fact he did

not have the paper in his possession should not have mattered anyhow because her

deputies should have been able to distinguish Plaintiff from the "fugitive Jimmie."

SERGEANT KELLEY'S comments during this recorded conversation appeared to

fault her deputies for their mis-actions. (This statement was also captured on live

stream.")

30.    Plaintiff shared the video with the Victorville news group on

Facebook and several other sites such as "Police Watch," "Police the Police," and

"Copwatch."  Within hours, the video had over 50,000 views.  From that video,

Plaintiff was contacted via Facebook by several news agencies and radio stations

and newspapers who sought to interview Plaintiff for a news story.

31.    Plaintiff gave an interview with NBC 4's Patrick Healy.  The news

1
2
3

story and Plaintiff's interview appeared on television.[1]

**July 2018 Incident**

4      32.   On July 20, 2018, Plaintiff was preparing for a wedding in which he
5
6
7
8
9

was going to be a groomsman.   Shortly after Plaintiff had gotten out of the shower, he heard a knock at his front door.   Plaintiff quickly put on some shorts believing the knock at the door was a UPS delivery for a package he had been waiting for that day.

10
11
12

      33.   Plaintiff answered the door in just shorts—no shoes, and no shirt. Instead, at the door was a Sheriff's deputy, "DOE 1."

13
14
15
16
17
18
19
20
21
22

      34.   DOE 1 began asking Plaintiff about his son, D.W., and an alleged incident that occurred more than five months prior in February 2018.[2]   Once Plaintiff determined his son was not hurt and okay, Plaintiff politely declined to discuss the matter any further with the deputy since the case had already been litigated in court, and the judge had closed the case.   Plaintiff told DOE 1 that he had already provided the Sheriff's Department a "follow-up" report back on February 2nd, 2018, when another deputy had interviewed both Plaintiff and his

23
24
25

---

[1] The entire news story and interview is accessible via the Internet at: https://www.nbclosangeles.com/news/local/Having-Similar-Name-and-Same-DoB-as-Wanted-Felon-Make-Life-Diffcult-for-Victorville-Man-486895351.html

26
27

[2] The February 2018 alleged incident was subsequently dismissed by a judge in Department S-50.   It has no bearing on this case.

28

son at the Plaintiff's residence.

35.    DOE 1 asked Plaintiff if D.W. was home.  Plaintiff told DOE 1 he was not; that D.W. was with his mother.  DOE 1 asked Plaintiff who lived at the house.  Plaintiff politely declined to answer the deputy's question, and told DOE 1 to call his sergeant.

36.    DOE 1 told Plaintiff that he was required to give him a report.  Again, Plaintiff explained to the deputy that he had already given a report and further informed the deputy to call Sergeant Connelly who was familiar with the situation. When Plaintiff also named Sergeant Roper, DOE 1 remarked, "How do you know him?"

37.    Once Plaintiff refused to discuss any incident with D.W., DOE 1 asked Plaintiff for his date of birth.  Anticipating that he was going to be put barefoot into the back of the deputy's patrol car on a hot summer day, Plaintiff told DOE 1, "Let me go get some shoes on."

38.    DOE 1 told Plaintiff, "You can't go back inside."  Plaintiff asked, "Am I under arrest?"

39.    Plaintiff confirmed his date of birth with the deputy.  The deputy told Plaintiff he had a felony arrest warrant.  Plaintiff asked, "For what?"  DOE 1 told Plaintiff it was an arrest warrant out of Riverside County for false pretenses.

40.    Plaintiff took a single step back from the deputy and told DOE 1, "Sir.

I've already dealt with this.  Don't touch me.  Call your sergeant."  DOE 1 told

Plaintiff, "I need you to put your hands…"  Plaintiff responded, "Don't touch me."

41.    The deputy told Plaintiff, "I can't have you go inside."  Plaintiff asked

the deputy what he was being arrested for.  DOE 1 told Plaintiff, "I just told you.

You have a felony warrant."  Plaintiff replied, "I told you that's not me.  That's

another guy.  Get your fucking hands off me.  I am not the person you are looking

for."

42.    On information and belief, Plaintiff alleges DOE 1's claimed mix-up

between Plaintiff and the "fugitive Jimmie" to be disingenuous since the deputy

was standing on the doorstep of Plaintiff's home—not the "fugitive Jimmie's"

home.  (This fact alone should have enabled the deputy to ascertain that the

"fugitive Jimmie" did not match with this home address; but rather it belonged to a

separate and innocent Jimmie Williams.)

43.    DOE 1 tried to grab Plaintiff's wrists.  The deputy then jumped on

Plaintiff's back aggressively.  The deputy then physically and violently took

Plaintiff down onto the concrete.  At no point, did Plaintiff swing his arms or try to

flee.

44.    With DOE 1 on top of Plaintiff, the deputy told Plaintiff to put his

hands behind his back.  Plaintiff explained to DOE 1 that he could not put his

hands behind him with the deputy on top of him, and further informed the deputy

that he recently had surgery on his shoulder.

45.    DOE 1 responded, "I understand that", and then pulled on Plaintiff's hands causing Plaintiff to yell out in pain.

46.    Plaintiff told DOE 1 to "Call Sergeant Roper right now," adding, "Sergeant Roper, Sergeant Connelly, or Sergeant Kelley."

47.    Laying on top of Plaintiff, DOE 1 asked, "Who else is in the house?" Plaintiff asked the Deputy, "Do you have a warrant?"  DOE 1 responded, "I just told you I do."  As Plaintiff was being led to the patrol car in handcuffs, he asked DOE 1, "Do you have video camera or audio?"

48.    After the arrest, another deputy, DOE 2, spoke on the phone with Plaintiff's pregnant girlfriend, Danielle.  DOE 2 told Danielle, "We have a referral here," and asked, "Are you almost here because [inarticulable]…Okay, I will see you here."

49.    DOE 2 then entered Plaintiff's residence.  Less than two minutes later, Danielle arrived at the house and walked through the opened front door.  She saw DOE 2 in her room, and asked, "Why are you guys in my room?"

50.    One officer questioned the children about punishment from their parents.  The child replied that Plaintiff has them do "pushups" for punishment.

51.    Later, the officer told Danielle that Plaintiff did not have the right to "push, fight, or shove."  The officer told Danielle that "[Plaintiff] has the

responsibility to say I'm innocent…" The officer described Jimmie as being "very uncooperative" and characterized Plaintiff's actions as trying to "run back inside" and "tried to leave." The video contradicts his assertions.

52.     When Danielle asked the officer how long Plaintiff would be in jail, the officer flatly responded, "Yeah, [he'll have to be in jail all weekend.] But he may get OR'd." The officer conceded that Plaintiff's frustrations were warranted, but said, "the cuffs come off just as quick as they go on."

53.     The officer told Danielle, "We tried to tell him he was being detained." The officer added, "He asked if he was being arrested" and the arresting officer said, "No, he was being detained." Danielle denied the officer's characterization of the verbal exchange because it was captured on her home's recording system. The officer requested Danielle to "Please, please, please, please, please e-mail me that so I can put that in the report."

54.     Plaintiff was arrested for Penal Code section 69 (felony resisting executive officer). He remained in custody overnight until he was able to post bond on his $50,000 bail.

55.     After his release, Plaintiff met with Captain Bessinger. Plaintiff video-recorded his meeting with Captain Bessinger. The recording shows Plaintiff giving Captain Bessinger the letter issued by Captain O'Hennison that said there would be no reason for deputies to be confused. O'Hennison said that the arrest

warrant for the "fugitive Jimmie" had been flagged.

56. At Plaintiff's court appearance, the Judge exonerated Plaintiff's bail. Plaintiff was informed that the DA's Office had up to a year from the date of the incident to file criminal charges.

**February 2019 Incident**

57. Sometime during the early hours of February 25, 2019—at approximately 12:00 a.m. midnight—Plaintiff woke up to the sounds of dogs barking outside his bedroom window. When he looked outside his window towards his vehicle parked out front, he saw large men standing at his vehicle.

58. One of the men spotted Plaintiff through the window and told Plaintiff to come to the window. Plaintiff asked the man to identify himself. The man told Plaintiff he and his group of men were from the U.S. Marshals Service, and that they were at his residence to serve an arrest warrant.

59. None of the men had any markings on their clothing to indicate that they were law enforcement or with any legitimate outfit associated with law enforcement.

60. The men knocked on Plaintiff's front door and told him to come out of his house. Plaintiff stood on the other side of the door inside his house and told the men he did not need to.

61. The men told Plaintiff they were going to get a battering ram and

break down his front door.

62.   Plaintiff called SBCSD.  He remained on the telephone with the Sheriff's Department. The men never made entry into Jimmie's home.

63.   Approximately, eight (8) minutes later, SBCSD deputies arrived at Plaintiff's residence.

64.   A sergeant from SBCSD told the group of men to go down the street, and told Plaintiff to return inside his house.  No one from SBCSD ever returned to Plaintiff's house to inform him what had occurred.  The entire ordeal frightened Plaintiff.

65.   On information and belief, the U.S. Fugitive Office is a private fugitive recovery company.  On information and belief, U.S. Fugitive Office gave notification to SBCSD several hours before attempting to serve the mistaken fugitive arrest warrant on Plaintiff on February 25, 2019.

66.   To this day, SBCSD, COUNTY, CITY, SERGEANT KELLEY, SHERIFF MCMAHON, and DOES continue to interfere with Plaintiff's constitutional rights.

## Facts Common to All Claims

### A. Biometric Identifiers Matched to Fingerprints

67.   Years ago, law enforcement developed means to reliably identify a

person to the exclusion of others who share the same or similar names, birthdates, physical characteristics, and the like.  One such means was the assignment to a person of a unique numerical identifier, matched to the person's fingerprints. Three such biometric identifiers are described below:

A. *CII numbers.*  The California Department of Justice ("CDOJ") assigns a unique identifying number to every person booked into a California jail. This number, called a "CII number," is matched to the arrestee's fingerprints.  Unless previously created, a CII number is generated upon a person's booking into any California jail; thereafter, the same CII number is used for every subsequent booking of that arrestee.  CDOJ will record all subsequent bookings of that person under the same CII number even if the person uses different names, birthdates, social security numbers, driver's license numbers etc.  CDOJ can do so because a CII number is matched to the arrestee's fingerprints which, of course, are unique and unchanging.  CII numbers are also assigned to persons who, for reasons of employment, must be fingerprinted and those prints are also reported to the CDOJ.  For instance, all California lawyers, judges and police officers have CII numbers.  A major use of a CII number is for generating its subject's criminal history, or "rap sheet," as maintained by the CDOJ. *People v. Martinez*, 22 Cal.4th 106, 121, 131 (2000) (example

of how CII number was used to obtain a person's criminal history). The criminal history will reflect the subject's known full name, aliases, birthdate, residential addresses, the subject's unique identifiers, such as social security, driver's license and FBI number (described below), along with the subject's arrest, prosecution and conviction history, including sentences to custody in county jail or state prison.

B. *FBI numbers.*  An FBI number is essentially the same as a CII number, but at the national level.  The FBI assigns a unique number, to an individual whose arrest is reported to the FBI.  Plaintiff is informed and believes and based thereon alleges that anyone convicted in California of a felony, has the fact of that conviction (date, charge, sentence, etc.) reported to the FBI.  The FBI, Plaintiff is informed, tracks all felony convictions from any jurisdiction within the United States under a person's unique FBI number.

C. *Cal ID numbers.*  A Cal ID number functions like a CII number, except that the Cal ID number tracks only San Bernardino County bookings, prosecutions, convictions.  As with CII numbers, Cal ID numbers are supposed to be unique to an individual, based on the person's fingerprints.  So no two persons should share the same Cal ID number, just as no two persons should share the same CII number.

68.     Plaintiff is informed and believes and based thereon alleges that a set of fingerprints is a more unique biometric identifier than DNA.  That is, while identical twins share the same DNA profile, the twins will nevertheless have non-matching fingerprints.

69.     Plaintiff is informed and believes and based thereon alleges that law enforcement considers biometric identifiers like CII, FBI and Cal ID numbers, to be far more reliable for identification purposes than matching name(s), birth date(s), and non-unique physical descriptors (sex, ethnicity, hair/eye color, etc.). Plaintiff is informed and believes and based thereon alleges that if law enforcement personnel observe that two different warrants identify their respective subjects by the same CII number, law enforcement will consider the two warrants to refer to the *same* person even though the warrants' other identifiers (names, birth dates and non-unique physical descriptors) do not match.

70.     Plaintiff is informed and based thereon alleges that the facts stated above are well known to those in the law enforcement community.  **Law enforcement officials also know that CII, FBI and Cal ID numbers are proxies for fingerprints. Hence, absent a breakdown or error in the system, two different CII numbers (or FBI numbers or Cal ID numbers) means two different people.**

**B. Livescan**

71.    Plaintiff is informed and believes that within a matter of a few minutes during the course of booking someone into jail, law enforcement agencies, including defendants herein, obtain a person's identification information and biometric identifiers. Law enforcement does so using a process called *Livescan*. When an arrestee is booked into a California jail, in lieu of manually "rolling" prints, the jailer takes an electronic image of the arrestee's fingerprints.  The arrestee's fingers are placed on an imaging machine's glass plate; the image is then transmitted electronically to the CDOJ.  Within a few minutes the CDOJ responds in one of two ways. If the arrestee's prints are already on file, the arrestee's CII number and associated identifiers, along with the arrestee's criminal history if requested, are sent to the arresting agency; if no match is made with existing fingerprints, the CDOJ assigns a newly created CII number and so informs the arresting agency.

**C. Warrantless Databases**

72.    Plaintiff is informed and believes and based thereon alleges that law enforcement uses local, state and national law enforcement databases to check for outstanding warrants on persons the police detain.  These law enforcement warrant databases are designed to capture, if known, the warrant subject's CII, FBI and Cal ID numbers. The CDOJ instructs California law enforcement agencies to include, if known, the warrant subject's CII, FBI and Cal ID numbers. **The databases are**

**also designed to record information about persons wrongly arrested on warrants meant for another, and the CDOJ instructs California law enforcement agencies to record such information into the database.**

### D. San Bernardino County's Warrant System

73.    Plaintiff is informed and believes and based thereon alleges that when a San Bernardino court issues an arrest warrant, the actual warrant is created on paper and signed by a judge.  Personnel employed by the SBCSD *S*heriff *A*utomated *W*arrant ("SAW") unit are then given the paper warrant (or photocopy thereof).  The personnel read the paper warrant and input into various law enforcement databases information taken from the paper warrant. The databases create an electronic record referencing the paper warrant, an electronic record that includes the warrant subject's identifiers as taken from the paper warrant. The identifiers recorded electronically include name, date of birth, ethnicity, height, weight, sex, eye and hair colors, and *if known* unique identifier numbers such as CII, FBI, Cal ID, driver's license, and social security numbers.  **Plaintiff is informed and believes and based thereon alleges that the computerized warrant system is also designed to capture information showing that one or more individuals has been exonerated or cleared as being the warrant's intended subject, and that person can be identified by his unique biometric identifiers such as CII, FBI and Cal Id numbers.**

74.     Although the electronic record that SAW creates reflects much of the information that is on the warrant itself, the electronic record is *not* the actual warrant; the actual warrant is on paper and signed by a judge.  Plaintiff is informed and believes and based thereon alleges that because the electronic records SAW creates do not reflect the actual warrants, the SBCSD maintains copies of the paper warrants in appropriate files and location so a relevant paper warrant can be accessed on a 24/7 basis for the express purposes of warrant verification and confirmation. SBCSD does so because the CDOJ mandates it.

75.     Plaintiff is informed and believes and based thereon alleges that whenever a law enforcement official desires to determine if a detainee or arrestee is the subject of an outstanding warrant, the official typically enters, or causes to be entered, the person's name and birth date into a computerized search engine used to query law enforcement warrant databases of the aforementioned electronic records of warrants whose identifiers either match or are similar to the search criteria.  The system then returns information about one or more warrants that *may* be a possible match.  However, law enforcement officials know that the determination of whether an outstanding warrant *in fact* actually matches to the person under investigation, must be made by the arresting or detaining law enforcement official.  That is, law enforcement officials know that the warrant databases cannot say if, in fact, the person detained is the subject of an outstanding

warrant.

76.    Law enforcement officials also know—because they are so trained by the CDOJ—that the law enforcement data systems are not reliable for purposes of making an arrest on a warrant; that there must be confirmation that a person detained is, in fact, the warrant's intended subject, a confirmation that requires direct contact with the agency that created the electronic record of the warrant to insure that the detaining agency has, in fact, seized the correct person.

77.    Plaintiff is informed and believes and based thereon alleges that because the electronic records created in the warrant databases are not the actual warrants but instead are a second or third generation record of actual warrants, mistakes and errors sometimes occur in the warrant databases.  Those errors, officials know, sometimes include the wrong identifiers being inputted into the warrant database as compared to the actual identifiers as recorded in the court-issued paper warrant.  This is why, Plaintiff is informed, CDOJ instructs law enforcement officials *not* to rely solely on identifiers as reported by the electronic data systems in effecting an arrest (as distinguished from merely detaining a person based on the electronic record).

**E.  WPS (Wanted Person System)**

78.    Plaintiff is informed and believes and based thereon alleges that since 1971, CDOJ has maintained Wanted Persons System ("WPS").  WPS is a

computer database containing records of arrest warrants issued by California

courts. Its function is to alert California law enforcement agencies about possible

arrest warrants issued from any California state court.

79.     Plaintiff is informed and believes and based thereon alleges that a

California law enforcement agency uses WPS to locate warrants issued by any

state court in California, even if the court sits in a county outside the county in

which the agency is based.

80.     Plaintiff is informed and believes and based thereon alleges that a law

enforcement agency queries for outstanding warrants, they do so by using a name

and date of birth, although the systems permit search and retrieval by other

identifiers such as social security number, driver's license number, FBI number

and/or CII number.

81.     Plaintiff is informed and believes and based thereon alleges that the

**CDOJ has instructed and trained California law enforcement agencies that**

**"[a] match made on a WPS record *does not*, by itself, *provide sufficient***

***grounds to arrest a person*;" instead, the agency that is detaining a person**

**based on information obtained via WPS that the person may be the subject of**

**a warrant, must contact the agency responsible for entry of the warrant**

**information into WPS (the "originating agency"), to confirm the existence of**

**the warrant and its application to an arrestee.**  The originating agency, in turn,

"must respond to a confirmation request within 10 minutes on a 24-hour basis."

82.    Plaintiff is informed and believes and based thereon alleges that the CDOJ instructs California law enforcement agencies that when an originating agency knows the warrant subject's unique numeric descriptors—driver's license number, social security number, FBI number, and/or CII number—the agency should input these identifiers into WPS. CDOJ so instructs, Plaintiff is informed, because inputting these identifiers will substantially reduce the likelihood that the wrong person will be detained or arrested on the warrant while inputting the data takes but a few seconds of additional keystrokes.

83.    Plaintiff is informed and believes and based thereon alleges that since two or more persons may share the same (or similar) names, birth dates and physical descriptors, CDOJ instructs California law enforcement agencies that when a hit is made in WPS, a positive identification of the arrestee with the warrant's subject "must be accomplished through the exchange of fingerprint facsimiles and other descriptors during the confirmation discussions between the WPS record contributor [i.e., originating agency] and the holding [i.e., arresting] agency."

**F. Criminal Histories**

84.    Plaintiff is informed and believes and based thereon alleges that pursuant to California law, any person who has been booked on a felony charge

must be fingerprinted and those prints must be transmitted to the CDOJ so that CDOJ can and will record, under the person's CII number matched to his fingerprints, the fact of the booking on that felony charge. In other words, the felony booking will be reflected on that person's CDOJ criminal history as verified by his fingerprints.

85.    Plaintiff is informed and believes and based thereon alleges that law enforcement officials also know that if a person is arrested on a felony bench warrant issued by a California court, if the person is in fact the felony warrant's true subject, at a minimum there will be on the person's CDOJ criminal history the fact of the earlier booking on the warrant's felony charge. Consequently, if an arrestee's CDOJ criminal history reflects no felony booking consistent with the later-issued felony bench warrant, law enforcement officials know or should know the absence of the prior felony booking is prima facie evidence that the warrant's intended subject is not the arrestee.

86.    Plaintiff is also informed and believes and based thereon alleges that the warrant subject's CDOJ criminal history ordinarily reflects the underlying prosecution that led to the warrant's issuance; if the history does not reflect such prosecution on the arrestee's CDOJ criminal history, it is highly likely that the arrestee is not the person the warrant seeks.

1

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – (Fourth Amendment – Unreasonable Seizure) (**June Incident**)[3]

(Against Defendant DOES 2-4 in their Individual Capacities)

87.    Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

88.    Defendant DOES acted under color of law and their acts deprived Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

89.    In seizing Plaintiff, Defendant DOES acted intentionally.

90.    The seizure was unreasonable in that Defendant DOES lacked probable cause to arrest Plaintiff.

91.    As a result of Defendant DOES' actions, Plaintiff suffered harms and losses.

92.    Plaintiff alleges that the acts of the individual Defendant DOES were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of

---

[3] With the exception of the first cause of action, all other causes of action pertain to the July 2018 incident.

1  punitive and exemplary damages in an amount to be determined at time of trial

2  against individual Defendants.

3

4  93.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to

5  an award of reasonable attorney's fees and costs according to proof.

6

7

8  ## **SECOND CLAIM FOR RELIEF**

9  ### **42 U.S.C. 1983 (Fourth Amendment – Unreasonable Investigative Stop and**
10  **Unreasonably Long Detention [\*\*_July 20, 2018 Incident_])**

11  (Against Defendant DOE 1 in his Individual Capacity)

12

13  94.   Plaintiff realleges and incorporates herein by reference all other

14  paragraphs of this Complaint, as though fully set forth in this claim for relief.

15

16  95.   Defendant DOE 1's investigatory stop on July 20, 2018 was invalid.

17  96.   Defendant DOE 1's investigatory stop was not justified at its

18  inception.

19

20  97.   Defendant DOE 1's investigatory stop was not based upon reasonable

21  suspicion.

22

23  98.   Defendant DOE 1's investigatory stop lasted longer than necessary to

24  effectuate the purpose of his pretextual encounter with Plaintiff.

25  99.   Defendant DOE 1's detention was invalid.

26  100.  Defendant DOE 1 was not acting in a swiftly developing situation.

27

28

101.   Plaintiff's actions did not contribute to any added delay.

102.   In attempting to confirm or dispel his pretextual suspicions of illegal activity, Defendant DOE 1 used unnecessary delays, exaggerated displays of authority, and other coercive tactics.

103.   Defendant DOE 1 continued to detain Plaintiff despite it being immediately clear that no crime had occurred.

104.   The detention was unreasonable in length and unreasonably degrading and humiliating.

105.   As a result of Defendant DOE 1's actions, Plaintiff suffered harms and losses.

106.   Plaintiff alleges that the acts of Defendant DOE 1's were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against DOE 1.

107.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.

///

# THIRD CLAIM FOR RELIEF

## Violation of 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Search and Seizure / Excessive Force [**_July 20, 2018 Incident_**])

(Against Defendant DOE 1 in his Individual Capacity)

108.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

109.   Plaintiff had a reasonable expectation of privacy in his person.

110.   Defendant DOE 1 conducted a search of Plaintiff's person.

111.   Defendant DOE 1 did not have a warrant when they searched Plaintiff's person.

112.   Defendant DOE 1's search of Plaintiff's person was unjustified.

113.    Defendant DOE 1 seized Plaintiff's person.

114.   In seizing Plaintiff, Defendant DOE 1 acted intentionally.

115.   The seizure was unreasonable and with excessive force in considering all of the circumstances known to Defendant DOE 1 at the time of his use of force.

116.   As a result of Defendant DOE 1's actions, Plaintiff suffered harms and losses.

117.   Plaintiff alleges that the acts of Defendant DOE 1 were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of

1    punitive and exemplary damages in an amount to be determined at time of trial.

2    118.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to

3

4    an award of reasonable attorney's fees and costs according to proof.

5

6                            **FOURTH CLAIM FOR RELIEF**

7

8    **Violation of 42 U.S.C. § 1983 (Fourth Amendment –**
     **Unreasonable Search of Residence [**_July 20, 2018 Incident_])**

9

10   (Against Defendant DOES 1 through 10 in their Individual Capacities)

11

12   119.   Plaintiff realleges and incorporates herein by reference all other

13   paragraphs of this Complaint, as though fully set forth in this claim for relief.

14   120.   Plaintiff had a reasonable expectation of privacy in his residence.

15   121.   Defendant DOES did not have a warrant to search Plaintiff's

16

17   residence.

18   122.   Defendant DOES entered Plaintiff's residence unlawfully and without

19

20   consent.

21   123.   Defendant DOES did not have probable cause and exigent

22   circumstances or an emergency sufficient to justify their entry.

23

24   124.   Plaintiff alleges that the acts of the individual Defendants were

25   willful, malicious, intentional, oppressive, reckless, and/or were done in willful

26   and conscious disregard of Plaintiff's rights, thereby justifying the awarding of

27

28

punitive and exemplary damages in an amount to be determined at time of trial.

125.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.


## FIFTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983 (First Amendment – Retaliation for Protected Speech [**July 20, 2018 Incident])

(Against Defendant DOE 1 in his Individual Capacity)


126.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

127.   Plaintiff engaged in protected conduct.  Plaintiff engaged in protected conduct when he complained to SERGEANT KELLEY at the Victorville Sheriffs' Station following the May 2018 and June 2018 incidents.  Plaintiff was also engaged in protected activity when he shared the video of his meeting with SERGEANT KELLEY online, and later gave an interview with NBC 4's Patrick Healy, which appeared on television.  Plaintiff was further engaged in protected activity when he politely declined to discuss the matter concerning his son with Defendant DOE 1 on his doorstep during the July 20, 2018 incident.

128.   Defendant DOE 1 took adverse actions against Plaintiff such that it would deter a person of ordinary firmness from continuing to engage in that

conduct.

129.   The adverse actions were motivated at least in part by Plaintiff's

protected conduct.

130.   Plaintiff alleges that the acts of DOE 1 were willful, malicious,

intentional, oppressive, reckless, and/or were done in willful and conscious

disregard of Plaintiff's rights, thereby justifying the awarding of punitive and

exemplary damages in an amount to be determined at time of trial against

individual Defendants.

131.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to

an award of reasonable attorney's fees and costs according to proof.

## SIXTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983 (Fourteenth Amendment Equal Protection and Deliberate Indifference [**July 20, 2018 Incident])

(Against All Defendants)

132.   Plaintiff realleges and incorporates herein by reference all other

paragraphs of this Complaint, as though fully set forth in this claim for relief.

133.   Plaintiff is an African-American.

134.   Individual Defendants' actions had a discriminatory intent and were

motivated by a discriminatory purpose to discriminate against PLAINTIFF based

upon his membership as an African-American.

135.   Individual Defendants knew that the alleged felony warrant not only contained material and dispositive discrepancies between Plaintiff's identifier and those listed on the felony warrant such that Plaintiff could not be the warrant's intended subject; but also, subjectively knew that Plaintiff was not subject to the arrest warrant due to his notification to SBCSD the month prior.

136.   Moreover, Defendants had easy access with virtually no appreciable effort or cost, to reliable official information that excluded Plaintiff as the subject of the felony arrest warrant before the deputy even walked to the door.

137.   Plaintiff was deprived of his constitutional rights by defendants and their employees acting under color of state law.

138.   Defendants COUNTY, CITY, SBCSD, SHERIFF MCMAHON, SERGEANT KELLEY, and DOES 1 through 10, have customs or policies which amount to deliberate indifference to constitutional rights.

139.   These policies were the moving force behind the constitutional violations Plaintiff suffered.

140.   With respect to the arresting officer DOE 1 on July 20, 2018, (and other DOE Defendants) his conduct was unreasonable.  Nor did this officer have a good faith belief that Plaintiff was subject to the warrant.  The circumstances indicated to the arresting DOE officer that further investigation was unwarranted.

141.   Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

142.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.

## SEVENTH CLAIM FOR RELIEF

### Invasion of Privacy (42 U.S.C. 1983) (**July 20, 2018 Incident)

(Against All Defendants)

143.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

144.   Under the United States Constitution, Plaintiff enjoys a right to privacy.

145.   Plaintiff had a legitimate and reasonable expectation that he would be able to live his life free of constant governmental interference and intrusion.

146.   Plaintiff's expectation was legitimate and reasonable in light of California Constitution, Article I, section 1.

147.   Defendants CITY, COUNTY, SHERIFF MCMAHON, SERGEANT KELLEY, and Defendant DOES 1 through 10 caused a serious and unwarranted invasion of Plaintiffs' privacy interests.  Defendant DOES 1 caused this breach when his unreasonable investigatory stop to turn into a false arrest and used excessive force to effectuate the false arrest. SERGEANT KELLEY, SHERIFF MCMAHON, CITY, COUNTY, and DOES caused this breach by consciously choosing not to ensure that the felony arrest warrant for the fugitive was properly flagged and marked so that Plaintiff would not suffer future harassment from deputies.  All Defendants were aware of SBCSD's reoccurring "mistaken identity" problem with Plaintiff by virtue of Plaintiff's interview with NBC 4's Patrick Healy that appeared on television.

148.   Defendants had a duty to protect Plaintiff's privacy interests. Defendants deliberate indifference to Plaintiff's constitutional interests breached this duty.

149.   The above-described acts of Defendants and their agents, officers and officials were done to deprive Plaintiff of his constitutional rights to privacy and were done with deliberate indifference to Plaintiff's federal constitutional rights.

150.   The above-described acts and conduct constituted a pattern of conduct, which was carried out under color of law by the Defendants.

151.   Defendants SBCSD, COUNTY, and CITY maintained a custom,

practice and policy of allowing the SBCSD and its officers, officials and employees, including DOES, to unlawfully, illegally, intentionally and willfully interfere with Plaintiff's privacy rights.

152.    As a direct and proximate result of Defendants' violation of Plaintiff's privacy and constitutional rights, Plaintiff has suffered actual damages.

153.    Defendants' conduct was a substantial factor in causing harm to Plaintiffs.

154.    Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

155.    By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.

///

///

## EIGHTH CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – Supervisory Liability)
### (**June 27, 2018 and July 20, 2018 Incidents**)

(Against Defendants SHERIFF MCMAHON, SERGEANT KELLEY, and
DOES 1-10 in their Individual Capacities)

156.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

157.   Supervisory Defendants SHERIFF MCMAHON, SERGEANT KELLEY, and DOES 1-10 acted under color of state law.

158.   The acts or failures to act of SHERIFF MCMAHON, SERGEANT KELLEY, and DOES' subordinates deprived Plaintiff of his particular rights under the United States Constitution.

159.   SHERIFF MCMAHON, SERGEANT KELLEY, and DOES knew or reasonably should have known his subordinates were engaging in these acts and knew the subordinate's conduct would deprive Plaintiff of these rights and SHERIFF MCMAHON, SERGEANT KELLEY, and DOES failed to act to prevent their subordinates from engaging in such conduct.

160.   SHERIFF MCMAHON, SHERIFF MCMAHON, SERGEANT KELLEY, and DOES set in motion a series of acts by his subordinates that he knew or reasonably should have known would cause the subordinates to deprive

the Plaintiff of these rights.

161.   SHERIFF MCMAHON, SHERIFF MCMAHON, SERGEANT KELLEY, and DOES disregarded the known or obvious consequences that a particular training deficiency or omission would cause his subordinate to violate Plaintiff's constitutional rights; and that deficiency caused the subordinates to deprive Plaintiff of his constitutional rights.

162.   SHERIFF MCMAHON, SERGEANT KELLEY, and DOES engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

163.   SHERIFF MCMAHON, SERGEANT KELLEY, and DOES' conduct was so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

164.   Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

165.   By virtue of the provisions of 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.

## NINTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – (Monell Claim of Policies, Customs, and Practices Causing Violations of Civil Rights)

(Against Defendants COUNTY, CITY, SBCSD, SHERIFF MCMAHON, and DOES 2 through 10)

166.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

167.   Defendants COUNTY, SBCSD, CITY, and DOES 2 through 10 were public entities and/or municipal corporations, duly organized and existing under and by virtue of the laws of the State of California.

168.   Based upon the principles set forth in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), COUNTY, CITY, SBCSD, SHERIFF MCMAHON, and DOES 2 through 10 bear liability because (a) their policies, practices and/or customs caused Plaintiff's injuries as a result of false arrest and excessive force; and (b) because their policies, practices, and/or customs caused the exacerbation of Plaintiff's injuries because they failed to fix the defect in their database.

### Mistaken Identity Arrests & Cover Up Arrests

169.   In particular, Defendants COUNTY, SBCSD, CITY, SHERIFF MCMAHON, and DOES 2 through 10 have condoned an ongoing pattern of

deliberate indifference with respect to SBCSD deputies who falsely arrest citizens due to mistaken identity, which includes the deliberate indifference demonstrated herein by DOES 1-10.  COUNTY, SBCSD, CITY, and its officials, including SHERIFF MCMAHON, maintained or permitted one of more of the following official policies, customs, or practices which contributed to this constitutional deprivation:

   a.  Failure to provide adequate training and supervision to SBCSD officers with respect to false arrests due to mistaken identity;

   b.  Encouraging, accommodating, enabling, or facilitating deputies who cover up police misconduct with lies;

   c.  Failure to adequately discipline or retrain officers who have falsely arrested innocent citizens due to mistaken identity;

   d.  Ratification of the intentional misconduct of SBCSD officers, including DOES 1 through 10 herein;

   e.  Condoning and encouraging police officers in the belief they can violate the rights of persons, including Plaintiff, with impunity, and that such conduct will not adversely affect opportunities for promotion and other employment benefits if they cover up their misconduct with lies;

   f.  Encouraging, accommodating, enabling, or facilitating a "code of

silence" among SBCSD officers and supervisors, including

SERGEANT KELLEY and DOES 1-10, pursuant to which false

reports were generated to cover up deputy misconduct.

g.  Maintaining unconstitutional policies and procedures that allow,

facilitate, and enable investigations into complaints of SBCSD

deputies' false statements in a manner inconsistent with accepted

criminal investigation procedures, that promote and encourage, ratify,

or condone cover ups, false or misleading statements of SBCSD

officer misconduct;

h.  Failure to ensure that SBCSD officers truthfully report facts and

failure to prevent police officers from acting in concert to cover up

their unconstitutional actions.

170.  Plaintiff is informed and believes and based thereon alleges that

SBCSD personnel ignored Plaintiff's complaints of mistaken identity because it is

the custom and practice of COUNTY, SBCSD, CITY, SHERIFF MCMAHON,

and DOES 2 through 10's to ignore claims of mistaken identity, that instead,

COUNTY, SBCSD, CITY, SHERIFF MCMAHON, and DOES 2 through 10's

leave it to a judge to figure out even though COUNTY, SBCSD, CITY, SHERIFF

MCMAHON, and DOES 2 through 10's know that judicial officers, unlike

defendants, do not understand and cannot readily access or use law enforcement

identification systems.

171.   Plaintiff is informed and believes and based thereon alleges that it is a longstanding COUNTY/SBCSD practice to ignore CII numbers for purposes of verifying whether or not an arrestee is the person described as the warrant's subject.  That is, even though SBCSD is informed that the arrestee's CII number is different as verified by the arrestee's fingerprints, COUNTY/SBCSD personnel routinely disregard the significance of the non-matching CII numbers because, per COUNTY/SBCSD practice, CII numbers play no role in the booking of prisoners into the SBCSD jail.

172.   Plaintiff is informed and believes and based thereon alleges that SBCSD personnel arrested Plaintiff on the warrant for the "fugitive Jimmie" despite the evidence—both known and readily available—establishing Plaintiff was not the warrant's subject, because it is the long-standing practice of SBCSD, COUNTY, CITY, and SHERIFF MCMAHON to regularly ignore arrestees' complaints they are being held on warrants meant for another, and instead to accept a determination that an arrestee is the warrant's subject based on a match to an electronic record even though SBCSD personnel know that the electronic record is deemed not reliable for purposes of an arrest and booking.

173.   Plaintiff is informed and based thereon alleges that while SBCSD claims it does not routinely ignore an arrestee's complaint that he is being arrested

based on another person's warrant, in fact, SBCSD personnel routinely ignore that fact which SBCSD's own records confirm:

    a. Plaintiff is informed and based thereon alleges that numerous individuals have testified they complained to SBCSD personnel that they were being arrested/imprisoned on someone else's warrant but that SBCSD personnel ignored their complaints.

    b. Plaintiff is informed and based thereon alleges that in the last seven years, SBCSD records show that as many as 450 arrestees/prisoners were in fact, wrongly jailed on warrants meant for others.

174.   Plaintiff is informed and based thereon alleges that for years Defendants COUNTY, SBCSD, CITY, SHERIFF MCMAHON, and DOES 2 through 10 have been aware that the SBCSD was routinely arresting/imprisoning innocent people on warrants describing different persons, yet these defendants took no steps to remedy the situation.

175.   COUNTY, SBCSD, CITY, SHERIFF MCMAHON, and DOES 2 through 10's customs, practices, or polices were a moving force and legal cause of Plaintiff's injuries, and each individual defendant officer, acting in accord with this custom, policy or practice, acted with deliberate indifference to Plaintiff's constitutional rights.

176.   As a direct and legal result of COUNTY, SBCSD, CITY, SHERIFF

MCMAHON, and DOES 2 through 10's acts and omissions, Plaintiff has suffered

damages, including without limitation, pain and suffering, extreme mental and

emotional distress, severe physical injuries, medical expenses, loss of earnings,

cost of suit, and other pecuniary losses not yet ascertained.

177.   As a result of 169. COUNTY, SBCSD, CITY, SHERIFF

MCMAHON, and DOES 2 through 10's violation of Plaintiff's constitutional

rights, Plaintiff is entitled to attorney's fees under 42 U.S.C. § 1988.


### **TENTH CLAIM FOR RELIEF**

### **(False Imprisonment) (**_June 27, 2018 and July 20, 2018 Incidents_)

(Against Defendant DOES 1 through 10 in their Individual Capacities)


178.   Plaintiff realleges and incorporates herein by reference all other

paragraphs of this Complaint, as though fully set forth in this claim for relief.

179.   Defendant DOES arrested PLAINTIFF on June 27, 2018 and July 20,

2018 without a warrant.

180.   The arrests actually harmed PLAINTIFF.

181.   Defendants' conduct was a substantial factor in causing Plaintiff's

harm.

182.   Plaintiff alleges that the acts of the individual Defendants were

willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

## ELEVENTH CLAIM FOR RELIEF

### (Negligence) (**June 27, 2018 and July 20, 2018 Incidents)

(Against All Defendants)

183.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

184.   Defendants had a legal duty to conform to a standard of conduct, which includes not breaching that duty by action, or inaction, taken to assure the appearance of competence by their subordinates, to not fail to exercise ordinary care under the circumstances herein and not breaching their duty of selecting training, reviewing and periodically evaluating the competency of these individually named deputies, and to take corrective measures to protect the Plaintiff.

185.   Defendants failed to meet this standard of conduct.

186.   The Defendants' failure was a legal cause of the resulting injury, and

1  Plaintiff was damages.

2

3

4  ## TWELFTH CLAIM FOR RELIEF

5  ### (Bane Act Violation – *Cal. Civ. Code* § 52.1)
6  ### (**June 27, 2018 and July 20, 2018 Incidents*)

7  (Against Defendant DOES 1 through 10 in their Individual Capacities)

8

9  187.   Plaintiff realleges and incorporates herein by reference all other

10
11  paragraphs of this Complaint, as though fully set forth in this claim for relief.

12  188.   Defendant DOES acted under color of law and their acts deprived

13  Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of

14
15  the United States.

16  189.   Defendant DOES seized Plaintiff's person.

17  190.   In seizing the Plaintiff, Defendant DOES acted intentionally.

18
19  191.   The seizure was unreasonable and with excessive force.

20  192.   Plaintiff alleges that the acts of the individual Defendants were

21  willful, malicious, intentional, oppressive, reckless, and/or were done in willful

22
23  and conscious disregard of Plaintiff's rights, thereby justifying the awarding of

24  punitive and exemplary damages in an amount to be determined at time of trial

25  against individual Defendants.

26
27  193.   By virtue of the provisions of California Code of Civil Procedure §

28

1021.5, Plaintiff is entitled to an award of reasonable attorney's fees and costs according to proof.

## THIRTEENTH CLAIM FOR RELIEF

### (Battery) (**_June 27, 2018 and July 20, 2018 Incidents_**)

(Against Defendant DOES 1 through 10 in their Individual Capacities)

194.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

195.   Defendant DOES touched Plaintiff or caused Plaintiff to be touched with the intent to harm or offend him.

196.   Plaintiff did not consent to the touching.

197.   Plaintiff was harmed or offended by the Defendant Officers' conduct.

198.   A reasonable person in Plaintiff's situation would have been offended by the touching.

199.   Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

## FOURTEENTH CLAIM FOR RELIEF

### Invasion of Privacy (Violation of Cal. Const. Article I, Section 1 and Intrusion into Private Affairs) (**_June 27, 2018 and July 20, 2018 Incidents_)

(Against All Defendants)

200.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

201.   Plaintiff had a legally protected interest in conducting personal activities without observation, intrusion, or interference ("autonomy privacy.")

202.   Plaintiff had a reasonable expectation of privacy and conducted himself in a manner consistent with his actual expectation of privacy.

203.   Conduct by the Defendants constituted a serious invasion of privacy.

204.   The Defendants intentionally intruded—or caused to be intruded—upon the solitude, seclusion, private affairs, and concerns of Plaintiff.

205.   The intrusion was substantial, and of a kind that is highly offensive to an ordinarily reasonable person.

206.   The intrusion caused Plaintiff to sustain injury, damage, loss or harm.

207.   Plaintiff alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, thereby justifying the awarding of

1  punitive and exemplary damages in an amount to be determined at time of trial

2  against individual Defendants.

3

4      208.   By virtue of the provisions of California Code of Civil Procedure §

5  1021.5, Plaintiff is entitled to an award of reasonable attorney's fees and costs

6  according to proof.

7

8

9              **FIFTEENTH CLAIM FOR RELIEF**

10             **Intentional Infliction of Emotional Distress**
11             (***June 27, 2018 and July 20, 2018 Incidents***)

12      (Against Defendant DOES 1 through 10 in their Individual Capacities)

13

14      209.   Plaintiff realleges and incorporates herein by reference all other

15

16  paragraphs of this Complaint, as though fully set forth in this claim for relief.

17      210.   Defendant DOES' conduct was outrageous.

18      211.   Defendants intended to cause Plaintiff emotional distress.

19

20      212.   Plaintiff suffered severe emotional distress because he thought he was

21  going to be shot by law enforcement.

22      213.   That Defendants' conduct was a substantial factor in causing

23

24  Plaintiff's severe emotional distress.

25      214.   Plaintiff alleges that the acts of the individual Defendants were

26  willful, malicious, intentional, oppressive, reckless, and/or were done in willful

27

28

and conscious disregard of Plaintiff's rights, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against individual Defendants.

## SIXTEENTH CLAIM FOR RELIEF

### (Injunctive Relief)

(Against All Defendants)

215.   Plaintiff realleges and incorporates herein by reference all other paragraphs of this Complaint, as though fully set forth in this claim for relief.

216.   Defendants have caused Plaintiff to suffer an irreparable injury. Remedies available at law, such as monetary damages, are inadequate to fully compensate for Plaintiff's injury.

217.   Considering the balance of hardships between the Plaintiff and defendant, a remedy in equity is warranted.

218.   The public interest would not be disserved by a permanent injunction.

219.   Without the requested injunctive relieve, there is a real and immediate threat that Plaintiff will be wronged again.

220.   By virtue of the provisions of California Code of Civil Procedure § 1021.5 and 42 U.S.C. § 1988, Plaintiff is entitled to an award of reasonable

attorney's fees and costs according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against defendants and each of them, and DOES 1 through 10 individually, jointly and severally, as described in the Claims for Relief Actions set forth above, as Defendants as follows:

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For interest on all sums as allowed by law;

4.  For injunctive relief;

5.  For punitive damages against individual defendants in an amount to be determined at trial;

6.  For attorney's fees incurred by the Plaintiff pursuant to 42 U.S.C. Section 1988 and Section 1021.5 of the *Code of Civil Procedure*;

7.  For an award against Defendants and in favor of Plaintiff of all costs incurred herein by Plaintiff; and

///

///

8.  For such other and further relief as the Court deems just and proper.

Dated: March 14, 2019          **LAW OFFICES OF MARK PACHOWICZ**

By_____
Mark Pachowicz
Jonny Russell
Attorneys for Plaintiff
Jimmie Williams III

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues properly triable by jury.

Dated: March 14, 2019          **LAW OFFICES OF MARK PACHOWICZ**

By_____
Mark Pachowicz
Jonny Russell
Attorneys for Plaintiff
Jimmie Williams III